**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| DANIEL G. HAWKINS | § | |
| and HEATHER M. HAWKINS, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. _____ |
| v. | § | |
| | § | |
| BANK OF AMERICA, N.A., | § | With Jury Demand Endorsed |
| | § | |
| Defendant. | § | |

## COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiffs, Daniel G. Hawkins ("Mr. Hawkins") and Heather M. Hawkins ("Mrs. Hawkins") (collectively, "Plaintiffs"), by and through counsel, for their Complaint against Defendant, Bank of America, N.A. ("Defendant" or "BANA"), state as follows:

### I. INTRODUCTION

1.      Plaintiffs claim Defendant engaged in willful, malicious, and illegal actions against them to collect from them a debt that had been included and discharged in their bankruptcy case, such actions being an integral part of Defendant's illegal design, implemented in its policies and procedures, to profit by harassing unsophisticated debtors and collecting from them debts that had been included and discharged in the debtors' respective bankruptcy cases.

2.      Specifically, Plaintiffs claim Defendant violated: 1) their common law privacy rights; 2) the Chapter 7 discharge injunction of the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division, and 3) the Telephone Consumer Protection Act ("TCPA"),

47 U.S.C. § 227 *et. seq*. Plaintiffs seek actual, statutory, and punitive damages, and legal fees and expenses from Defendant.

## II. PARTIES

3.      Plaintiffs are natural persons residing in LaRue County, Kentucky.

4.      Defendant is a foreign limited liability company that may be served by delivering a summons to its registered agent, CT Corporation Systems, 1999 Bryan St, Suite 900, Dallas, TX 75201-3136.

## III. JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1334 and 1367 and 15 U.S.C. § 1681p.

6.      Venue is proper this district, because Defendant transacts business in this district, Plaintiffs filed their bankruptcy case in this district, and the conduct complained of occurred in this district.

## IV. FACTUAL ALLEGATIONS

**A.      Before Filing Their Bankruptcy Case, Plaintiffs Surrendered and Vacated the Collateral/Property.**

7.      Before Plaintiffs filed their Bankruptcy Case, Bank of America, N.A., ("Defendant" or "BANA"), was the mortgage servicer and/or owner of a loan identified as BANA No. xxxxxx7599 (the "Loan" or "Account"), which Loan was secured by a lien on real property, Plaintiffs' prior homestead at 1833 Skyline Dr., Sherman, Texas ("the Property"). Defendant asserted a claim against Plaintiffs to collect on the Loan, a consumer debt that Plaintiffs allegedly

owed that required them to pay money arising out of transactions of which money, property, insurance, or services, primarily for personal, family, or household purposes, were the subject.

8.      On September 29, 2011, Defendant foreclosed on the Property and title to it transferred from Plaintiff to Defendant.

**B.      The Debt Was Discharged as to Plaintiff's Personal Liability in Their Bankruptcy Case.**

9.      On July 20, 2012, Plaintiffs filed for bankruptcy under Chapter 13 of the U.S. Bankruptcy Code in case number 12-41943 ("Bankruptcy Case") in the Eastern District of Texas Bankruptcy Court ("Bankruptcy Court").

10.      On Schedules "A" and "D" filed with their bankruptcy petition, Plaintiffs listed the Account as a secured claim and debt, secured by a lien on the Property.

11.      On or about August 2, 2012, the Bankruptcy Noticing Center for the Bankruptcy Court sent a copy of the "Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors and Deadlines" ("341 Notice"), by first class mail to Defendant. The 341 Notice warned all creditors, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. §362. The United States Postal Service did not return the 341 Notice sent to Defendant, creating a presumption it was received by Defendant.

12.      On June 27, 2014, Plaintiffs filed a Notice of Conversion by Debtor from Chapter 13 to Chapter 7, and on June 30, 2014, the Bankruptcy Case was converted to one under Chapter 7 of the U.S. Bankruptcy Code.

13.      On July 2, 2014, the Bankruptcy Noticing Center mailed out the "Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors and Deadlines" to all creditors identified in the

Bankruptcy Case, including Defendant and other parties, based on the mailing matrix previously filed in the Bankruptcy Case ("Chapter 7 341 Notice"). This mailing constituted formal notice to Defendant of the Bankruptcy Case and its conversion to a Chapter 7 case. The Chapter 7 341 Notice again warned all creditors, including Defendant, in conspicuous language, against violating the automatic stay imposed by 11 U.S.C. §362. The United States Postal Service did not return this 341 Notice sent to Defendant, creating a presumption it was received by Defendant.

14.     A true and correct copy of Plaintiffs' Chapter 7 341 Notice is attached hereto as Exhibit "A" and is incorporated herein by reference.

15.     On July 8, 2014, Plaintiffs filed in their Bankruptcy Case their Amended Schedules A, B, E, F, I, and J, as well as an Amended Matrix that provided Defendant's correct address.

16.     On Amended Schedule "A," entitled "Real Property," filed in Plaintiffs' Bankruptcy Case, Plaintiffs listed the Property as "Abandon," and they had, in fact, vacated the Property.

17.     A true and correct copy of Plaintiffs' Amended Schedule "A" is attached hereto as Exhibit "B" and is incorporated herein by reference.

18.     On August 25, 2014, Defendant filed a motion for relief of stay ("Motion for Relief"), seeking to lift the automatic stay as to the Property, which was granted on September 15, 2014.,

19.     On October 7, 2014, the Bankruptcy Court issued an order granting Plaintiffs a bankruptcy discharge ("Discharge Order"). The Discharge Order followed Official Form B18, including the explanatory language contained therein. The Discharge Order discharged Plaintiffs from any personal liability for the debt created by the Account. Included with the Discharge Order

was an explanation of the general injunction prohibiting any attempt to collect discharged debts from the Plaintiffs, warning all creditors, in conspicuous language, that "**Collection of Discharged Debts Prohibited**" and that "a creditor is not permitted to contact a debtor by mail, phone, or otherwise . . . or take any other action to collect a discharged debt from the debtor." Hereinafter, the phrase "post-discharge" refers to an act committed or event occurring after the entry of the Discharge Order.

20.     On October 9, 2014, the Bankruptcy Noticing Center mailed a copy of the Discharge Order to Defendant, by first class mail. This mailing, which was not returned, constituted notice to Defendant of the discharge granted in Plaintiffs' Bankruptcy Case and the replacement of the automatic stay with the discharge injunction imposed by 11 U.S.C. §524(a).

21.     A true and correct copy of the Discharge Order is attached hereto as Exhibit "C."

22.     At no time during the pendency of Plaintiffs' Bankruptcy Case did Defendant, or any other person or entity object to or dispute the details or completeness of the Account listed on Schedule "A" to Plaintiffs' Petition.

23.     At no time during the pendency of the Bankruptcy Case did Defendant or any other person or entity file a proof of claim in Plaintiffs' Bankruptcy Case.

24.     At no time during the pendency of the Bankruptcy Case did Defendant or any other person or entity object to our dispute the details of the subject claim contained in Plaintiffs' bankruptcy Petition.

25.     At no time during the pendency of Plaintiffs' Bankruptcy Case did the Bankruptcy Court declare or hold that the debt created by the Account was non-dischargeable.

26.     At no time during the pendency of the Bankruptcy Case or after the entry of the Discharge Order did Plaintiffs reaffirm the subject claim or debt with any person or entity.

27.     On or about August 23, 2016, Plaintiffs filed a lawsuit entitled *Daniel G. Hawkins and Heather M. Hawkins vs. Bank of America, N.A.* against Defendant in the United States District Court for the Eastern District of Texas, Dallas, Case No. 4:16-cv-00639-ALM (the "First Lawsuit") alleging various violations of state and federal law and the Chapter 13 Discharge Injunction by Defendant. Among the factual allegations in the First Lawsuit were that Defendant had illegally attempted to collect from Plaintiffs on the Account after they had been discharged and that Defendant had illegally accessed Plaintiffs' consumer reports with Experian and TransUnion Credit Bureaus.

28.     On January 25, 2017, the parties filed a Joint Notice of Settlement in the First Lawsuit (the "Settlement"), and, on February 20, 2017, the parties filed a Joint Stipulation with Prejudice.

29.     Despite Defendant's knowledge of the Plaintiffs' Bankruptcy Case and the entry of the Discharge Order therein, and despite Defendant's knowledge of and participation in the First Lawsuit, Defendant has resumed debt collection activities against Plaintiffs on the discharged Account, sending them statements and letters on the Account in an effort to collect the discharged debt.

**C.      Post-discharge, Defendant Engaged in Knowing, Willful, and Malicious Attempts to Collect the Discharged Debt from Plaintiffs.**

30.     Despite the change in the legal status of the Account upon the Bankruptcy Court's entry of the Discharge Order, which, by operation of law, made the debt legally uncollectible and,

in effect, closed the Account, and after Plaintiffs had surrendered and permanently vacated the Property, Defendant attempted to collect from Plaintiffs on the discharged debt.

**D.    After the Discharge of the Debt in Plaintiffs' Bankruptcy Case, Defendant Attempted to Collect the Discharged Debt from Plaintiffs and Made Harassing and Offensive Contacts with Them.**

31.    More than two (2) years after the October 7, 2014 entry of the Discharge Order in Plaintiffs' Bankruptcy Case, Defendant engaged in prohibited debt collection activity against Plaintiffs on the Account by: (1) sending Plaintiffs billing statements, correspondence and notices to coerce or deceive them to pay the discharged debt; and (2) calling Plaintiffs on multiple occasions.

**1.    After Plaintiffs' Discharge, Defendant Sent Plaintiffs At Least Five (5) Statements and Four (4) Notices and Letters to Harass Plaintiffs and Attempt to Coerce or Deceive them to Pay the Discharged Debt.**

32.    More than two (2) years after the discharge was granted in Plaintiffs' Bankruptcy Case, Defendant resumed sending Plaintiffs billing statements and correspondence on the Account, attempting to coerce or deceive Plaintiffs to make payments on the Account, in whole or in part, despite Defendant's knowledge the debt on the Account had been discharged and that Plaintiffs had surrendered and vacated the Property.

33.    On or about March 17, 2017, more than 29 months after the entry of the Discharge Order, Defendant once again sent Plaintiffs a monthly statement for the Account ("03/17/2017 Monthly Statement"), complete with a payment coupon and return envelope, representing that there was a "Total Amount Due" of $101,092.02, which included a "Regular monthly payment" of $1,346.64; "Outstanding Payments, fees, and charges" of $99,605.38; "Current period fees and charges" of $15.00 (apparently for a "property Inspection-Vacant"); and unspecified "Other

advances" of $125.00. The monthly statement claimed that the total amount was due by "04/01/17." The Statement also warns: "WE MAY REPORT INFORMATION ABOUT YOUR ACCOUNT TO CREDIT BUREAUS. LATE PAYMENTS, MISSED PAYMENTS OR OTHER DEFAULTS ON YOUR ACCOUNT MAY BE REFLECTED IN YOUR CREDIT REPORT." Although the statement purports to originate from an office of Defendant in Tampa, FL, it directs that payments be mailed to one of two addresses in Dallas, TX, and it further directs that inquiries regarding insurance matters be sent to an address in Fort Worth, TX.

34.     A redacted copy of the 03/17/2017 Monthly Statement is attached hereto as Exhibit "D" and incorporated herein by reference.

35.     On or about March 17, 2017, Defendant sent Plaintiffs an "Escrow Account Disclosure Statement" letter ("03/17/2017 Escrow Account Letter"). The 03/17/2017 Escrow Account Letter summarized the "breakdown of your last escrow analysis, current escrow analysis and any available options." In short, the 03/17/2017 Escrow Account Letter notified Plaintiffs that their "Monthly Payment" would be changing, effective 05/01/2017, from $1,346.64 to a minimum of $1,452.64 or a maximum of $1,466.43, depending on how Plaintiffs chose to pay a purported escrow shortfall of $551.49. Once again, the 03/17/2017 Escrow Account Letter instructs Plaintiffs to remit future payments and the escrow shortfall payment (if they chose to pay it in a lump sum) to Defendant's post office box in Dallas, TX. This 03/17/2017 Escrow Account Letter was sent to Plaintiffs more than 29 months after the debt on the Account was discharged and long after the Plaintiffs had vacated the Property.

36.     A redacted copy of the 03/17/2017 Escrow Account Letter is attached hereto as Exhibit "E" and incorporated herein by reference.

37.     On or about March 23, 2017, more than 29 months after the entry of the Discharge Order and, to the best of Plaintiffs' knowledge, approximately five and one-half years after Defendant originally foreclosed on the Property (on or about 09/29/2011), Defendant sent Plaintiffs a letter offering Plaintiffs $10,000 for their cooperation in avoiding foreclosure ("03/23/2017 Foreclosure Avoidance Letter"). The 03/23/2017 Foreclosure Avoidance Letter purported to offer Plaintiffs options that, given their discharge and their having vacated the Property, were not available to them. The only plausible explanation for the 03/23/2017 Foreclosure Avoidance Letter is that it was an attempt by Defendant to coerce or deceive Plaintiffs to contact Defendant, in furtherance of Defendant's scheme to collect from Plaintiffs on the discharged Account. The letter urges Plaintiffs to "Please call us at 844.643.3378 so we can initiate your short sale and begin the necessary steps to complete the transaction."

38.     A redacted copy of the 03/23/2017 Foreclosure Avoidance Letter attached hereto as Exhibit "F" and incorporated herein by reference.

39.     On or about April 15, 2017, Defendant had a letter hand-delivered to Plaintiffs, advising them that Defendant "has important [but unspecified] information for you" ("04/15/2017 Hand-Delivered Letter") .  The letter states as follows: "If you would like more information about the purpose of this visit, please contact Bank of America at the number provided above. Once again, the only plausible explanation for the 04/15/2017 Hand-Delivered Letter is that it was an attempt by Defendant to coerce or deceive Plaintiffs to contact Defendant, in furtherance of Defendant's scheme to collect from Plaintiffs on the discharged Account.

40.     A redacted copy of the 04/15/2017 Hand-Delivered Letter is attached hereto as Exhibit "G" and incorporated herein by reference.

41.     On or about April 17, 2017, more than 30 months after the entry of the Discharge Order, Defendant sent Plaintiffs another monthly statement for the Account ("04/17/2017 Monthly Statement"), complete with a payment coupon and return envelope, representing that there then was a "Total Amount Due" of $102,573.45. With the exception of the amounts and dates specified in the 04/17/2017 Monthly Statement, it was, in all material respects, identical to the 03/17/2017 Monthly Statement described in Paragraph 35, above; accordingly, Plaintiffs repeat, re-allege, and incorporate by reference the statements in Paragraph 35, above, as if rewritten here in their entirety.

42.     A redacted copy of the 04/17/2017 Monthly Statement is attached hereto as Exhibit "H" and incorporated herein by reference.

43.     On or about May 17, 2017, more than 31 months after the entry of the Discharge Order, Defendant sent Plaintiffs another monthly statement for the Account ("05/17/2017 Monthly Statement"), complete with a payment coupon and return envelope, representing that there then was a "Total Amount Due" of $104,359.88. With the exception of the amounts and dates specified in the 05/17/2017 Monthly Statement, it was, in all material respects, identical to the 03/17/2017 Monthly Statement described in Paragraph 35, above; accordingly, Plaintiffs repeat, re-allege, and incorporate by reference the statements in Paragraph 35, above, as if rewritten here in their entirety.

44.     A redacted copy of the 05/17/2017 Monthly Statement is attached hereto as Exhibit "I" and incorporated herein by reference.

45.     On or about May 25, 2017, Defendant's Texas attorneys, Barrett Daffin Frappier Turner and Engel, LLP ("Barrett Daffin"), sent Mr.  Hawkins, in Buffalo, KY, two (2) letters entitled "NOTICE TO OCCUPANT OF PENDING ACQUISITION," informing him they had been authorized by Defendant to initiate legal proceedings in connection with a foreclosure on the

Property ("05/25/2017 Barrett Daffin Letters to Mr. Hawkins"). The 05/25/2017 Barrett Daffin Letters to Mr. Hawkins were sent to Mr. Hawkins, by attorneys, no less, more than 31 months after the entry of the Discharge Order and, to the best of Plaintiffs' knowledge, approximately five and one-half years after Defendant had originally foreclosed on the Property (on or about 09/29/2011). The immediately foregoing notwithstanding, the 05/25/2017 Barrett Daffin Letters to Mr. Hawkins refer to the Account and the Property as "the mortgage for the property in which you are living…." The letters also state "**This Company is a debt collector attempting to Collect the Debt. Any information obtained will be used for that purpose.**" The letters instruct Mr. Hawkins to contact Defendant at an address in Plano, TX with any questions. Significantly, the letters request that Mr. Hawkins provide Defendant personal and confidential information about his employment and income—information to which Defendant was and is not entitled.

46.     Redacted copies of the 05/25/2017 Barrett Daffin Letters to Mr. Hawkins are attached hereto as Exhibits "J" and "K" and incorporated herein by reference.

47.     On or about May 25, 2017, Barrett Daffin sent Mrs. Hawkins, in Sherman, TX, two (2) letters entitled "NOTICE TO OCCUPANT OF PENDING ACQUISITION," informing her they had been authorized by Defendant to initiate legal proceedings in connection with a foreclosure on the Property ("05/25/2017 Barrett Daffin Letters to Mrs. Hawkins"). The 05/25/2017 Barrett Daffin Letters to Mrs. Hawkins were sent to Mrs. Hawkins, by attorneys, no less, more than 31 months after the entry of the Discharge Order and, to the best of Plaintiffs' knowledge, approximately five and one-half years after Defendant had originally foreclosed on the Property (on or about 09/29/2011). The immediately foregoing notwithstanding, the 05/25/2017 Barrett Daffin Letters to Mrs. Hawkins refer to the Account and the Property as "the

mortgage for the property in which you are living…." The letters also state "**This Company is a debt collector attempting to Collect the Debt. Any information obtained will be used for that purpose.**" The letters instruct Mrs. Hawkins to contact Defendant at an address in Plano, TX with any questions. Significantly, the letters request that Mrs. Hawkins provide Defendant personal and confidential information about her employment and income—information to which Defendant was and is not entitled.

48.     Redacted copies of the 05/25/2017 Barrett Daffin Letters to Mrs. Hawkins are attached hereto as Exhibits "L" and "M" and incorporated herein by reference.

49.     On or about June 7, 2017, Barrett Daffin sent Mr. Hawkins a letter entitled "NOTICE OF ACCELERATION," informing him they had been authorized by Defendant to initiate legal proceedings in connection with the foreclosure of the property ("06/07/2017 Mr. Hawkins Acceleration Letter"). The letter states: "Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt" and "The Mortgage Servicer is authorized to represent the Mortagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan. Additionally, the letter states: "**This Company is a debt collector attempting to Collect the Debt. Any information obtained will be used for that purpose**." Once again, the 06/07/2017 Mr. Hawkins Acceleration Letter was sent to Mr. Hawkins, by attorneys, more than 32 months after the entry of the Discharge Order and, to the best of Plaintiffs' knowledge, approximately five

and one-half years after Defendant had originally foreclosed on the Property (on or about 09/29/2011).

50.    A redacted copy of the 06/07/2017 Mr. Hawkins Acceleration Letter is attached hereto as Exhibit "N" and incorporated herein by reference.

51.    On or about June 7, 2017, Barrett Daffin sent Mrs. Hawkins a letter entitled "NOTICE OF ACCELERATION," informing her they had been authorized by Defendant to initiate legal proceedings in connection with the foreclosure of the property ("06/07/2017 Mrs. Hawkins Acceleration Letter"). The letter states: "Payment of the past due balance on the Debt has not been received by the Mortgage Servicer. Because of this default, the Mortgagee has elected to ACCELERATE the maturity of the Debt" and "The Mortgage Servicer is authorized to represent the Mortagee by virtue of a servicing agreement with the Mortgagee. Pursuant to the Servicing Agreement and Texas Property Code §51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the above referenced loan. Additionally, the letter states: "**This Company is a debt collector attempting to Collect the Debt. Any information obtained will be used for that purpose**." Once again, the 06/07/2017 Mrs. Hawkins Acceleration Letter was sent to Mrs. Hawkins, by attorneys, more than 32 months after the entry of the Discharge Order and, to the best of Plaintiffs' knowledge, approximately five and one-half years after Defendant had originally foreclosed on the Property (on or about 09/29/2011).

52.    A redacted copy of the 06/07/2017 Mrs. Hawkins Acceleration Letter is attached hereto as Exhibit "O" and incorporated herein by reference.

53. On or about June 19, 2017, more than 32 months after the entry of the Discharge Order, Defendant sent Plaintiffs another monthly statement for the Account ("06/19/2017 Monthly Statement"), complete with a payment coupon and return envelope, representing that there then was a "Total Amount Due" of $106,041.31. With the exception of the amounts and dates specified in the 06/19/2017 Monthly Statement, it was, in all material respects, identical to the 03/17/2017 Monthly Statement described in Paragraph 35, above; accordingly, Plaintiffs repeat, re-allege, and incorporate by reference the statements in Paragraph 35, above, as if rewritten here in their entirety.

54. A redacted copy of the 06/19/2017 Monthly Statement is attached hereto as Exhibit "P" and incorporated herein by reference.

55. On or about July 19, 2017, more than 33 months after the entry of the Discharge Order, Defendant sent Plaintiffs another monthly statement for the Account ("07/19/2017 Monthly Statement"), complete with a payment coupon and return envelope, representing that there then was a "Total Amount Due" of $108,406.98. With the exception of the amounts and dates specified in the 07/19/2017 Monthly Statement, it was, in all material respects, identical to the 03/17/2017 Monthly Statement described in Paragraph 35, above; accordingly, Plaintiffs repeat, re-allege, and incorporate by reference the statements in Paragraph 35, above, as if rewritten here in their entirety.

56. A redacted copy of the 07/19/2017 Monthly Statement is attached hereto as Exhibit "Q" and incorporated herein by reference.

57. On or about August 3, 2017, Defendant sent Plaintiffs a "LENDER-PLACED HAZARD INSURANCE CANCELLATION NOTICE" letter on the Account regarding hazard insurance on the Property ("08/03/2017 Insurance Cancellation Letter"), in its attempts to coerce Plaintiffs to obtain insurance on the Property. The notice states **"The insurance coverage BANK**

14

**OF AMERICA, N.A obtained for the Property Location referenced below has been cancelled."** The notice also informed Plaintiffs that Defendant will credit any unearned premium to "your account as determined by **Bank of America.**" As with the correspondence described above, the 08/03/2017 Insurance Cancellation Letter was sent to Plaintiffs more than 34 months after the entry of the Discharge Order, more than five and one-half years after Defendant, to the best of Plaintiffs' knowledge, had originally foreclosed on the Property (on or about 09/29/2011), and long after Plaintiffs had vacated the Property.

58.     A redacted copy of the 08/03/2017 Insurance Cancellation Letter is attached hereto as Exhibit "R" and incorporated herein by reference.

**2.      Defendant Made Illegal Collection Calls to Plaintiff.**

59.     On one or more occasions after the entry of the Discharge Order in Plaintiffs' Bankruptcy Case, which, by operation of law, changed the legal status of the Account and closed the Account, making the debt on the Account legally uncollectible, Defendant impermissibly called Plaintiffs regarding the Account, attempting to coerce or deceive Plaintiffs to make payment on the Account.

### V. GROUNDS FOR RELIEF - COUNT I

### INVASION OF PRIVACY

60.     Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 7 through 59, above, as if rewritten here in their entirety.

61.     Defendant's conduct, as described hereinabove, when it made harassing and invasive contacts with Plaintiffs through statements letters and telephone calls, post-discharge and post-foreclosure of the Property, constituted invasions of Plaintiffs' private affairs. These

invasions were ones that would be highly offensive to a reasonable person, because, by law, Defendant was forbidden to contact Plaintiffs post-discharge regarding the subject debt. Such wrongful acts caused injury to Plaintiffs, which resulted in their extreme emotional anguish, loss of time and inconvenience.

62.     Plaintiffs' injuries resulted from Defendant's malice, which entitles Plaintiffs to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## VI. GROUNDS FOR RELIEF – COUNT II

### VIOLATIONS OF THE DISCHARGE INJUNCTION

63.     Plaintiffs repeat, re-allege, and incorporate by reference Paragraphs 7 through 59, above, as if rewritten here in their entirety.

64.     At all times material to this proceeding, Defendant had actual knowledge about Plaintiffs' Bankruptcy Case and the discharge of the debt it was attempting to collect from Plaintiffs.

65.     By continuing to send Plaintiffs statements and letters, and by continuing to contact Plaintiffs by telephone, when Defendant knew the debt on the Account had been discharged in Plaintiffs' Bankruptcy Case and the Property had been foreclosed, Defendant's actions were harassing attempts to coerce or deceive Plaintiffs to pay the discharged debt on the Account. Such actions by Defendant were, and are, prohibited by the bankruptcy discharge injunction and the U.S. Bankruptcy Code.

66.     Defendant's actions were willful acts and constitute harassing acts and efforts to collect the debt on the Account from Plaintiffs, in violation of the automatic stay and discharge injunction of 11 U.S.C. § 524(a). Defendant's failure to comply with the requirements of the

Bankruptcy Code and the Discharge Order illustrate Defendant's contempt for federal law and the discharge injunction.

67.     The actions of Defendant constitute gross violations of the discharge injunction imposed by 11 U.S.C. §524(a)(1)-(3).

68.     The facts and background enumerated above demonstrate that Defendant willfully violated the orders and injunctions of the Bankruptcy Court in the bankruptcy filed by Plaintiffs. After this prima facie showing by Plaintiffs, the duty falls on Defendant to show, as its only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court, which inability must go beyond a mere assertion of inability. Failing a showing by Defendant of its present inability to comply with the orders and injunctions of the Bankruptcy Court, Plaintiffs must prevail on their claims, and Defendant must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court. Any defense put forth by Defendant in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendant. Any allegation of a good faith exception should not be allowed.

69.     Specifically, Defendant violated that part of the Bankruptcy Court's Discharge Order issued pursuant to 11 U.S.C. §524(a)(2) that "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived.…"

70.     There are no exceptions under 11 U.S.C. § 524, other provisions of the United States Bankruptcy Code, or other applicable law that would permit Defendant's conduct, which was in blatant disregard of the discharge injunction.

71.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by way of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint, none of which occurred here. No waiver of the orders or injunctions of the Bankruptcy Court has occurred.

72.     Also, there is no requirement of mitigation on the part of Plaintiffs that is relevant to Defendant's violations of the orders and injunctions of the Bankruptcy Court. Any burdening of Plaintiffs with an obligation to police the misconduct of Defendant would be a complete derogation of the law. It is well-settled that each party to an injunction or order of the Court is responsible for ensuring its own compliance with the injunction or order and for bearing the cost of compliance. Any attempt by Defendant to mount such a defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any such defense put forth by Defendant in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and actions of Defendant. No defense of failure to mitigate should be allowed.

73.     Plaintiffs have been injured and damaged by Defendant's actions, and Plaintiffs are entitled to recover judgment against Defendant for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for Defendant's violations of 11 U.S.C. § 524 and pursuant to the Court's powers under 11 U.S.C. § 105.

### VII. GROUNDS FOR RELIEF – COUNT III

### VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)

74.     Plaintiffs restate and reiterate herein previous Paragraphs Nos. 7 through 59 above, as if set forth in their entirety.

75.     After Plaintiffs received their bankruptcy discharge, Defendant made and/or initiated a series of telephone calls to Plaintiffs on their cellular phone (hereinafter referred to as the "Telephone Calls").

76.     The Telephone Calls were placed by Defendant's employees or agents.

77.     The Telephone Calls were initiated by an automatic telephone dialing system.

78.     The telephone system utilized by Defendant to place the Telephone Calls has the capability to dial telephone numbers without human intervention.

79.     Defendant made the Telephone Calls by dialing Plaintiff(s)'s cellular phone using its telephone systems and without human intervention.

80.     The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et. seq*, (the "TCPA"), prohibits making "any call (other than a call made for emergency purposes or made with the prior express of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227 (b)(1)(A)(iii).

81.     Congress delegated authority to the Federal Communications Commission (FCC) to promulgate implementing regulations. 47 U.S.C. §227 (b)(2). In relevant part, the FCC's implementing regulations provide: "[n]o person . . . may (i) initiate any telephone call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) [t]o any telephone number assigned to a . . . cellular telephone service."

82.     The TCPA creates a private federal cause of action. 47 U.S.C. §227(b)(3). A plaintiff who prevails in an action for damages under the TCPA is entitled to the greater of actual

damages or $500 for each violation, plus additional damages up to the greater of $1,500 or treble

actual damages for each violation committed willfully or knowingly. 47 U.S.C.  §227 (b)(3).

83.     The actions of Defendant in this case in making the Telephone Calls and calling

Plaintiff(s) on their cellular phone(s) violated the provisions of the TCPA for which Plaintiffs seek

damages. Even if the calls did not connect to Plaintiff(s) the attempts to make the calls were still

violations. *See Manufacturers Auto Leasing, Inc. vs. Autoflex Leasing, Inc*. 139 S.W.3rd 342, 347

(Tex. App.–Fort Worth 2004, pet denied) (citing FCC Enforcement Action Letter in Case No. EB-

00TC-001).

84.     The Telephone Calls were willfully placed.

85.     The Telephone Calls were knowingly placed.

86.     The Telephone Calls were not made for emergency purposes.

87.     Plaintiffs did not give their prior express consent to Defendant to be called using

an artificial or pre-recorded voice or by use of an automatic dialing system.

88.     The exact dates and times of all of the Telephone Calls are unknown at this time

but will be provided at the time of trial.

89.     Plaintiffs never authorized Defendant to call them on their cellular phone(s)

regarding the Account and if they had in the past, *arguendo*, such consent was withdrawn upon

receiving their bankruptcy discharge.

90.     At all times at issue Defendant's employees and agents have knowingly or willfully

violated the TCPA by: (1) placing calls to Plaintiff(s)'s cellular phone(s); (2) using an automatic

telephone dialer system; and/or (3) leaving an artificial or pre-recorded voice to deliver messages.

91.     The actions of Defendant at issue were willful and intentional.

92.    The Telephone Calls adversely affected the privacy rights that the TCPA was intended to protect.

93.    Plaintiffs have complied with all conditions precedent to bring this action.

## VIII.  VICARIOUS LIABILITY/*RESPONDEAT SUPERIOR*

94.    After a reasonable time to conduct discovery in this case, Plaintiffs believe they will be able to show that all actions at issue were taken by employees, agents, servants, or representatives of any type for Defendant in the line and scope of such individuals' (or entities') empress or implied authority, through employment, agency, or representation, which imputes liability on Defendant for all actions at issue under a theory of *respondeat superior* and/or vicarious liability.

95.    Defendant is vicariously liable for the actions of Barrett Daffin with regard to the letters Barrett Daffin sent to Plaintiff(s) at issue because Barrett Daffin was acting as an agent for Defendant in sending those letters and trying to coerce Plaintiff(s) to make payment on the Account to benefit Defendant, or to make contact with Defendant so Defendant could further harass them or try to coerce payment from them on the discharged debt. The agency relationship between Defendant and Barrett Daffin makes Defendant vicariously liable for the acts at issue taken by Barrett Daffin.

## IX. DAMAGES

96.    All of the conduct of Defendant at issue has proximately caused Plaintiffs past and future monetary loss, past and future mental distress, emotional anguish and a discernable injury to Plaintiffs' emotional state and other damages, evidence for which will be presented to the jury.

Moreover, dealing with the consequences of Defendant's actions has cost Plaintiffs time and mental energy, which are precious to them.

97.     At all relevant times, Defendant knew, and continues to know, that, pursuant to a discharge order granted by a U.S. Bankruptcy Court, discharged debts are no longer legally collectible, but Defendant has made a corporate decision to willfully and maliciously act contrary to its knowledge in its calculated decision to attempt to act, willfully, maliciously, and contrary to its knowledge of bankruptcy and other applicable law, to attempt to collect from Plaintiffs on a debt it knew had been discharged as a result of Plaintiffs' Bankruptcy Case. Further, at the times at issue in this lawsuit, after the Parties had settled the Prior Lawsuit based on similar claims and facts, Defendant was well-aware there was no debtor-creditor relationship between the Parties, and Defendant had no legal right to contact Plaintiffs about the discharged debt or to attempt to collect on the discharged debt.

98.     Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has been involved in dozens, if not hundreds, of disputes involving complaints about the type of conduct at issue here; nevertheless, Defendant, intentionally and knowingly, has refused to correct its policies and comply with applicable laws, of which laws it is well-aware.

99.     Plaintiffs believe that, after reasonable discovery in this case, they will be able to show that all actions at issue were taken by employees, agents, servants, or representatives, of any type, of Defendant, within the line and scope of such individuals' (or entities') employment, agency, or representation; under the doctrine of *respondeat superior,* Defendant is liable for their acts performed with regard to Plaintiffs, the Account and the discharged debt.

100.    Plaintiffs believe that, after reasonable discovery, they will be able to show that all actions taken by, or on behalf of, Defendant were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, with the desire to harm Plaintiffs, with the knowledge that such actions were very likely to harm Plaintiffs, and/or with actual knowledge that such actions were in violation of the law.

101.    Plaintiffs believe that, after reasonable discovery, they will be able to show that Defendant has engaged in a pattern and practice of wrongful and illegal behavior, in accordance with its established policies and procedures, with respect to willfully, intentionally, and maliciously attempting to collect on debts included in and discharged in bankruptcy. Accordingly, Defendant is subject to punitive damages, statutory damages, and all other appropriate measures necessary to punish and deter similar future conduct by Defendant. Moreover, Plaintiffs' injuries resulted from Defendant's malice, actual fraud, and/or willful and intentional misconduct, entitling Plaintiffs to punitive damages.

102.    Defendant's conduct reveals a conscious and reckless disregard of Plaintiffs' rights. The injuries suffered by Plaintiffs were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiffs to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

103.    Due to Defendant's conduct, Plaintiffs were forced to hire counsel, and their damages include reasonable attorneys' fees incurred in prosecuting their claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, Daniel G. Hawkins and Heather M. Hawkins, pray the Court:

A. Enter judgment in favor of Plaintiffs and against Defendant for statutory damages, actual damages, costs, and reasonable and necessary attorney's fees, for Defendant's violations of the Plaintiff's privacy rights, the discharge injunction and the TCPA;

B Find that appropriate circumstances exist for an award of punitive damages to Plaintiffs;

C. Award Plaintiffs pre-judgment and post-judgment interest as allowed by law; and

D. Grant such other and further relief, in law or equity, to which Plaintiffs might show themselves to be justly entitled.

Respectfully submitted,

/s/ James J. Manchee
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
MANCHEE & MANCHEE, PC
2745 North Dallas Parkway, Suite 420
Plano, Texas 75093
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

COUNSEL FOR PLAINTIFFS

## JURY DEMAND

Plaintiffs hereby demands a trial by jury on all issues so triable.

September 13, 2017                    /s/ James J. Manchee
Date                                 James J. Manchee